IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ALLAN OWENS,

                Plaintiff,

    v.

JOY TASSLER, RANDALL HEPP, CHRIS KRUEGER,                  OPINION and ORDER
E. DAVIDSON, M. PATTEN, L. BARTOW,
WENDY MOFILS, C. O'CONNELL, S. POLK,                        18-cv-772-jdp
S. ROBSON, ED WALL, JON LITSCHER,
MARK CLEMENTS, W. ROSE, M. GREENWOOD,
J. BOVEE, PETER BARCA, SUSAN JOHNSON,
STEVEN FELLINGER, LINDA ELLEFSON,
and BRIDGETTE SMITH,

                Defendants.

---

Plaintiff Allan Owens, appearing pro se, is an inmate at Fox Lake Correctional Institution. Owens alleges that prison officials wrongly charged him sales tax for postage that was pre-stamped on envelopes he bought, and that the warden retaliated against him for complaining about the tax by deducting higher than permitted amounts from his account to pay off costs assessed against him in a previous case in this court. He brings a retaliation claim under the First Amendment to the United States Constitution and due process claims under the Fourteenth Amendment.

All defendants except for former Department of Corrections Secretary Ed Wall are represented by the attorney general's office. These defendants, who I'll refer to as the "state defendants," have filed a motion for summary judgment. Dkt. 80. Wall has filed his own motion for summary judgment. Dkt. 85. I will grant those motions and dismiss the case: defendants are entitled to qualified immunity on the postage-tax claim, Owens's due process

claim fails because he had adequate postdeprivation remedies, and he fails to provide evidence showing that the warden retaliated against him.

PRELIMINARY MATTERS

Before deciding defendants' summary judgment motions, I will address two motions filed by Owens.

Owens has filed a motion for leave to file a sur-reply to the state defendants' motion for summary judgment. Dkt. 113. Owens vaguely states that he wants to respond to "misquotes" or other parts of defendants' replies, and he notes that the state defendants at various points in their materials stated that they could not locate exhibits that Owens cites in his opposition. I'll dismiss Owens's motion to file further summary judgment materials. Sur-replies are generally disfavored by the court, and Owens doesn't adequately explain any reason to allow one here. I take him to be saying that the state defendants missed exhibits that were already part of the record before summary judgment motions were filed. *See, e.g.*, Dkt. 30-1 (documents that Owens titles as his exhibits No. 1–75). I've reviewed those and other exhibits previously placed on the record and cited by Owens in his summary judgment opposition materials. The fact that the state defendants fail to adequately respond to some of Owens's proposed findings does not affect the outcome of the case. So I won't have the parties address the exhibits further.

Owens has also filed a motion asking the court to recruit him counsel for trial. Dkt. 119. But I will be dismissing the case with this order, so his request for counsel at trial is moot.

UNDISPUTED FACTS

Plaintiff Allan Owens has been incarcerated at Fox Lake Correctional Institution (Fox Lake) since September 10, 2013. For most of Owens's time at Fox Lake, the canteen charged Wisconsin sales tax on the entire purchase amount for envelopes that include pre-stamped postage. The canteen does not itemize the envelope and stamp separately on receipts: the entire purchase is billed together as one, for 58 cents. Owens believes that it is illegal under both federal and state law to place a sales tax on postage or to charge more for postage than face value.

On March 10, 2018, Owens sent a letter to defendant Warden Randall Hepp, raising a series of issues, including the sales tax on the postage portion of pre-stamped envelopes. Hepp responded a few days later. Hepp referred Owens to Wisconsin Administrative Code provisions on sales tax and a state sales tax publication. He also told Owens to address his further questions to the business office.

Within ten days of this response, prison staff began to deduct 50 percent of Owens's monthly income to pay about $1,700 in costs taxed by this court against Owens in a previous lawsuit in this court, *Owens v. Balow*, No. 15-cv-489-bbc (W.D. Wis.). The parties now agree that the 50 percent deductions were incorrect and should have been 20 percent under federal law and state procedures. Owens believes that defendant Hepp ordered staff to deduct the incorrect amount to retaliate against him for complaining about the sales tax on pre-stamped envelopes.

The state defendants offer the following explanation for the 50 percent deductions. The bill of costs did not provide instructions on the rate at which the Department of Corrections should collect the debt from Owens. In December 2017, retained counsel for the defendant in

3

the '489 case (a county employee) wrote to the DOC, explaining Owens's debt and stating that under Wisconsin law, Owens's trust fund account should be frozen until there were enough funds in Owens's account to pay the costs.

This was the first time that defendant Stacey Polk, the Fox Lake financial program supervisor, had received a letter from a private law firm asking to make collections to pay for a bill of costs in a federal lawsuit. Polk discussed the matter with DOC legal counsel Katy Ariss (who is not a defendant) and defendant Wendy Monfils, the Division of Adult Institutions (DAI) Office of Management and Budget director, to determine whether setting up a withholding was appropriate.

Ariss and Monfils initially thought that DOC staff should not collect the costs on counsel's behalf. Counsel for the defendant in the '489 case followed up in February and March 2018. Ariss changed her mind about the deduction: on March 15, 2018, Ariss wrote to Monfils, stating that under Wisconsin Statute § 814.25 ("Costs in actions by prisoners"), prison staff should deduct the taxed costs from Owens trust fund account, applying DAI Policy 309.45.02 ("Inmate Trust System Deductions"), which lists dozens of different types of withholdings and the percentages at which they must be collected. Dkt. 84-1, at 5–6. Ariss stated that she deferred to Monfils about how to properly apply the DAI policy, but noted that the deduction might fall under priority 25 ("Court Costs") or 26 ("Other Imposed Surcharges") in the DAI deductions schedule. *Id.* at 5. Under both of those categories, funds are withdrawn at 50 percent of an inmate's income.

That same day, Monfils emailed Polk and defendant Sonia Robson, another Fox Lake financial program supervisor, and told them to set up monthly deductions for the taxed costs under the "court costs" category, at 50 percent withholding. Deductions were taken at 50

percent for about ten-and-one-half months, from March 22, 2018, until February 7, 2019, at which point the rate was changed to 20 percent. The rate was switched to 20 percent after consultation with counsel for the state defendants, spurred at least in part by May 24 and June 18, 2018 orders issued by this court in the '489 case responding to Owens's motion to stay the collection of costs. *See* Dkt. 90-1 and Dkt. 90-2. Those orders explained that under 28 U.S.C. § 1915, the collection of costs should be handled by prison officials the same way filing fees are: by deducting 20 percent of the inmate's monthly income. *See id.* Under DAI Policy 309.45.02, "federal filing fees" are deducted at 20 percent. Dkt. 84-1, at 5.

During the ten-and-one-half-month period that officials deducted funds for Owens's costs at 50 percent, Owens wrote to prison officials, including Hepp, and filed grievances through the Inmate Complaint Review System, complaining about the legality of deducting his funds and also about the percentage that was being deducted: Owens thought that 20 percent was the appropriate percentage. None of the officials who received letters or reviewed his grievances ordered the deduction percentage to be changed.

In total, $217.76 was collected for the taxed costs when the rate was set at 50 percent. If collections had been made during the same period at 20 percent, the DOC would have collected $87.10 for the bill of costs, $130.66 less than what was collected.

As for the tax on pre-stamped envelopes, Owens says that the DOC now uses a private vendor for the stamped envelopes and they no longer assess the tax.

ANALYSIS

## A.  Due process

### 1.  Sales tax on pre-stamped envelopes

Owens contends that numerous prison officials violated his rights through their practice of placing a sales tax on the sale of pre-stamped envelopes. In his complaint, Owens said that this tax violated federal law prohibiting selling stamps for more than face value. *See* 18 U.S.C. § 1721 ("Sale or pledge of stamps"). I rejected that precise theory in my order screening the complaint, stating that § 1721 is a federal criminal law applying only to "Postal Service officer[s] or employee[s]," not Wisconsin DOC officials. Dkt. 5, at 2. But I granted Owens leave to proceed on a due process claim because postage stamps are generally not subject to sales tax in Wisconsin, so Owens appeared to have shown that he was incorrectly deprived of funds.

To state a § 1983 procedural due process claim, a plaintiff's allegations must demonstrate that he: (1) has a cognizable property or liberty interest; (2) has suffered a deprivation of that interest; and (3) was denied due process. *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010). There's no question that Owens has a property interest in the prison trust account funds and it is undisputed that the DOC charged him tax on the entire cost of pre-stamped envelopes.

As for whether Owens was deprived of due process, his claim is premised on the idea that the state "illegally" taxed him, meaning that there was no legal authority allowing DOC officials to tax the pre-stamped envelopes. The state defendants say that Wisconsin law does allow them to tax the entire envelopes, but even aside from the substance of Owens's claims,

they argue that they are entitled to summary judgment because the court doesn't have jurisdiction over or should abstain from deciding the sales tax claims.

The Tax Injunction Act, 28 U.S.C. § 1341, prohibits federal district courts from "enjoin[ing], suspend[ing] or restrain[ing] the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." A taxpayer may file a petition with the Department of Revenue for a declaratory ruling about the taxability of the envelopes and then seek judicial review if the ruling is unfavorable. *See* Wis. Stat. § 227.41(1); *Butcher v. Ameritech Corp.*, 2007 WI App 5, ¶ 39, 298 Wis. 2d 468, 727 N.W.2d 546 (discussing procedure for taxpayers to challenge sales tax assessed against them). Courts have concluded that Wisconsin's processes for challenging tax determinations meet that requirement. *See, e.g.*, *Darne v. State of Wis., Dep't of Revenue*, 137 F.3d 484, 490 (7th Cir. 1998); *Domínguez-Schugt v. Wisconsin*, No. 18-cv-231-jdp, 2019 WL 764611, at *1 (W.D. Wis. Feb. 21, 2019). That means that this court does not have jurisdiction to consider Owens's claim for injunctive relief. Additionally, Owens states that the DOC no longer sells the pre-stamped envelopes, and that private vendors who do sell them do not assess the sales tax, making his claim for injunctive relief moot. *See* Dkt. 102, at 2.

Owens also brings claims for damages. In the interest of comity with state governments, federal district courts generally abstain from considering claims for damages over state-tax-related claims. *See Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 115–16 (1981) ("We consider such interference [into state operations] to be contrary to the scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts." (internal citation and quotation omitted)); *A.F. Moore & Assocs., Inc. v. Pappas*, 948 F.3d 889, 896 (7th Cir. 2020). Comity requires taxpayers seeking damages to pursue relief

in the state courts, assuming that state-court remedies are "plain, adequate, and complete." *Fair Assessment in Real Estate*, 454 U.S. at 116. The federal court should keep the claims if the plaintiff cannot fairly litigate them in state court. *See A.F.* Moore, 948 F.3d at 895–96 (district court should not have invoked comity where plaintiff's equal protection claim could not be litigated under Illinois procedures).

It's not clear that Owens does have an adequate state-court remedy for his damages claims. The state defendants say that a person challenging a tax may file a claim for a refund under Wis. Stat. § 77.59(4), but that provision is limited to claims for at least $50. Neither party explains how much of a refund Owens would be due if he prevailed. Given the small amount of sales tax that would apply to each pre-stamped envelope sold for 58 cents, Owens would have to have purchased more than a thousand envelopes to reach $50 worth of invalid sales tax. So I'm not convinced that Owens would be able to use the state's sales-tax-refund procedures to recover his damages or that it is appropriate to abstain from considering his claims for damages.

The state defendants argue that Wisconsin law allowed them to assess the sales tax. They cite various parts of the Wisconsin Administrative Code concerning sales tax that prohibit taxing postage stamps pre-attached to envelopes, but only where the costs of the stamp and envelope are separately itemized on the receipt. *See* Wis. Admin. Code § Tax 11.78(2)(b) ("Stamps, coins, and bullion") ("The portion of the selling price attributable to postage in the sale of prestamped envelopes [is exempt from sales tax] if the nontaxable postage is separately itemized to the customer."); *see also* §§ Tax 11.56(2)(c) ("Printers' taxable sales") (sales tax may be assessed for "[c]harges for envelopes, but not for separately stated charges for postage in the sale of prestamped envelopes."); Tax 11.82(2)(b) ("Mailing services") ("The sales price from

8

charges for envelopes is taxable, but not separately stated charges for postage in the sale of prestamped envelopes.").

It's undisputed that the canteen did not separately itemize the cost of the envelope and the cost of the postage when selling the pre-stamped envelopes to inmates. The tax regulations cited above don't prohibit placing a sales tax on a pre-stamped envelope when the cost of the envelope and postage is charged together as a whole. Owens seems to take it for granted that sales tax can't be charged on postage in any form, but nothing in the Wisconsin sales tax regulations cited by the state defendants prohibits the state from charging sales tax on the entire pre-stamped envelope and Owens doesn't point to any other federal or Wisconsin laws that prohibit taxing postage either.

Given that the Wisconsin tax regulations do not specifically bar assessment of sales tax on the postage portion of unitemized pre-stamped envelopes, the state defendants argue that they are entitled to summary judgment under the doctrine of qualified immunity. That doctrine shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotation omitted). A clearly established right is one that is sufficiently clear such "that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). In other words, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Owens bears the burden of demonstrating that his rights were clearly established to overcome qualified immunity. *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 473 (7th Cir. 2011). Owens doesn't identify a Supreme Court or Seventh Circuit court of appeals case in

support of his due process claim, and I not aware of any closely related precedent that supports his claim. I note further that qualified immunity generally protects government officials enforcing state laws. *See Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979) ("The enactment of a law forecloses speculation by enforcement officers concerning its constitutionality—with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws."); *Doe v. Heck*, 327 F.3d 492, 515–16 (7th Cir. 2003) (applying *DeFillippo* in holding that caseworkers were entitled to qualified immunity from Fourth Amendment violation because they acted pursuant to lawful statute; the statute was not "so patently unconstitutional as to deny the defendants qualified immunity"). Without any clear source of law prohibiting the sales tax, defendants are entitled to qualified immunity on Owens's due process claim.

Owens pivots to argue that the tax was assessed only against prisoners, in violation of his rights to equal protection of the laws under the Fourteenth Amendment. But I didn't grant him leave to proceed on an equal protection theory, and even if I had, he doesn't present any evidence that similarly situated non-prisoners are treated differently by defendants. So I'll grant summary judgment to both sets of defendants on Owens's sales tax claims. This is the only claim against defendant Wall, leaving only the state defendants moving for summary judgment on Owens's remaining claims.

### 2. Withdrawal of trust account funds

Owens alleges that directly after he complained about the sales tax on pre-stamped envelopes, defendant Warden Randall Hepp directed prison staff to deduct funds from Owens's trust fund account to pay costs taxed against him in the '489 case, at a higher rate (50 percent) than allowed under state or federal law (the deductions should have been 20 percent), and that

various other state defendants were involved in dismissing Owens's grievances about this issue. I granted Owens lave to proceed on a due process claim against the officials imposing or upholding the 50 percent deductions and for making deductions even when the balance in Owens's account was less than $10, which Owens believes violated 28 U.S.C. § 1915 and state procedures.

I'll first dispense with the aspect of Owens's claim about officials deducting funds from his account even when the balance of his trust account was under $10. Under § 1915(f)(2), payment of costs by prisoners is governed by the provision regarding payment of filing fees found in § 1915(b)(2), which in turn states:

> After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

I've previously noted that the second sentence of this provision "is not a model of clarity," but this court has interpreted it as meaning that prison officials must deduct 20 percent of a prisoner's income each month but may wait until the total amount deducted is more than $10 before submitting funds to a recipient. *Flournoy v. McKenzie*, No. 14-cv-554-jdp, 2015 WL 4094357, at *2 (W.D. Wis. July 7, 2015) (citing *Williams v. Litscher*, 115 F. Supp. 2d 989, 991–93 (W.D. Wis. 2000). So Owens was not improperly deprived of funds when staff deducted funds even though his account balance was $10 or below; he can't maintain a due process claim for that allegation.

That leaves the second part of Owens's claims about the trust fund account deductions: the percentage of funds deducted to pay the taxed costs. It's undisputed that for about a year, prison officials incorrectly withdrew 50 percent of Owens's income to pay the taxed costs

11

instead of 20 percent. The parties agree that 28 U.S.C. § 1915 and DAI Policy 309.45.02, taken in conjunction, state that 20 percent is the proper deduction percentage for taxed costs in a federal case.

As I'll discuss further with regard to Owens's retaliation claim, the facts do not completely support his original allegations about each state defendant's involvement in imposing the 50 percent deduction. But it's unnecessary to untangle each defendants' personal involvement in the events, because the undisputed facts cannot support a due process claim against any of them.

In granting Owens leave to proceed on his claim about the deductions, I stated that "[d]ue process claims like these are difficult for prisoners to win; a plaintiff may not be able to state a due process claim where the deprivation is 'random and unauthorized,' a predeprivation hearing would be impractical, and the plaintiff has adequate postdeprivation remedies." Dkt. 5, at 3. This is ultimately where Owens's claims fail.

In screening Owens's claims, I stated that his allegations suggested that defendants' conduct was not random and unauthorized but rather the result of at least an informal policy mandating the deduction of inmates' funds at higher rates than otherwise allowed under state or federal law. *Id.* at 3. But the undisputed facts reveal that the DOC's implementation of the 50 percent deduction was simply an incorrect application of the DAI policy.

And this kind of mistake isn't something that would be practical to avoid by using predeprivation procedures: Fox Lake officials would have to hold a hearing any time one of the 1,350 inmates at Fox Lake incurred a new debt. Courts have consistently held that due process claims for deprivation of an arrestee's or prisoner's property interest fail where the plaintiff has adequate postdeprivation remedies. *See, e.g., Hudson v. Palmer*, 468 U.S. 517, 533 (1984)

(intentional "random and unauthorized" destruction of inmate's property did not support due process claim where postdeprivation remedies available); *Davenport v. Giliberto*, 566 Fed. App'x. 525, 529 (7th Cir. 2014) (negligent loss of arrestee property did not offend due process, and would not even if intentional, because state-law claim for conversion was available); *Tyler v. Wick*, No. 14-cv-68-jdp, 2016 WL 5496631, at \*6 (W.D. Wis. Sept. 29, 2016) (civil detainee had adequate postdeprivation remedies to challenge loss of property and money), *aff'd*, 680 F. App'x 484 (7th Cir. 2017).

Owens had, and indeed used, the administrative grievance process. Owens argues that examiners incorrectly rejected his appeals and gave him incorrect advice about how to appeal those rejections. But irregularities in the grievance process itself do not support independent due process claims. *See, e.g.*, *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("Prison grievance procedures . . . do not by their very existence create interests protected by the Due Process Clause, and so the alleged mishandling of Owens's grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim.").[1] And the state defendants are correct that Owens had other meaningful postdeprivation remedies available. *See Tyler*, No. 14-cv-68-jdp, 2016 WL 5496631, at \*6 (discussing Wisconsin causes of action for conversion or damages from injury to property); *see also Hamlin v. Vaudenberg*, 95 F.3d 580, 585 (7th Cir. 1996) (inmate complaint review system, certiorari review under Wisconsin law, and Wisconsin tort remedies against prison officials are adequate remedies for deprivation of good-time credits).

---

[1] The plaintiff in *Owens v. Hinsley* was not the plaintiff in this case.

Because Owens could have been compensated—or perhaps still can be compensated—for the improper withdrawal of his funds, the unauthorized deductions of his funds at 50 percent instead of 20 percent do not give rise to a due process claim under the Constitution. I will grant the state defendants' motion for summary judgment on these claims.

## B.  Retaliation

Owens also alleges that defendant Hepp directed prison officials to make the unlawful 50 percent deductions only after he complained about the tax on pre-stamped envelopes.

To prevail on a First Amendment retaliation claim, a plaintiff must show that: (1) he engaged in activity protected by the First Amendment; (2) defendants took actions that would deter a person of "ordinary firmness" from engaging in the protected activity; and (3) the First Amendment activity was at least a "motivating factor" in defendants' decision to take those actions. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). The state defendants do not argue the first two elements, although I'm not convinced that a person of ordinary firmness would be deterred from engaging in further protected activity given the meager harm that was caused Owens here. His taxed costs were paid off faster than he would have liked but there's no question that he indeed owed the money that was prematurely withdrawn.

The state defendants argue that Owens's claim fails because Hepp wasn't involved in setting the 50 percent withdrawal rate. Owens's only evidence tying Hepp to the withdrawal rate is that on March 10, 2018, Owens sent Hepp a letter complaining about various things, including the pre-stamped envelope tax. Hepp responded to Owens on March 13, referring Owens to Wisconsin Administrative Code provisions and a state sales tax publication. He also told Owens to address his further questions to the business office. Defendant Robson set up

14

the 50 percent withdrawal rate a few days later, after consultation with other state officials—not including Hepp.

Owens believes that Hepp directed the implementation of the withdrawal rate because of the timing of events, but suspicious timing alone is generally insufficient to establish a genuine issue of material fact for trial, even when there is evidence showing that a particular defendant was clearly involved in the alleged retaliatory action. *See, e.g.*, *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 506–07 (7th Cir. 2004). Here, Owens does not present any other evidence than the timing to suggest that Hepp was personally involved in setting the withdrawal rate, or that Hepp had a retaliatory motive for doing so. This isn't enough to dispute the state defendants' evidence showing that the rate was set by DOC financial staff and legal counsel, unrelated to Owens's correspondence with Hepp. Owens's unsupported belief that Hepp was involved and that Hepp meant to retaliate against him is simply not evidence, so he can't use it to stave off summary judgment. *See, e.g.*, *Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014) (While nonmovant "is entitled . . . to all reasonable inferences in her favor, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." (citation omitted)). So I will grant summary judgment to Hepp on Owens's retaliation claim.


ORDER

IT IS ORDERED that:

1. Plaintiff Allan Owens's motion for leave to file a sur-reply, Dkt. 113, is DENIED.

2. Plaintiff's motion for the court's assistance in recruiting him counsel, Dkt. 119, is DENIED.

3. Defendants' motions for summary judgment, Dkt. 80 and 85, are GRANTED.

15

4.   The clerk of court is directed to enter judgment for defendants and close this case.

Entered December 18, 2020.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge

16